1

2

3

4

5

6

O

7

8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

9

10

11

12

13

14

15

16

| | |
|---|---|
| ISABEL CRUZ, | ) Case No. SACV 12-1143-JPR |
| Plaintiff, | )<br>) |
| vs. | ) MEMORANDUM OPINION AND ORDER<br>) REVERSING COMMISSIONER AND<br>) REMANDING FOR FURTHER |
| CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,[1] | ) PROCEEDINGS<br>)<br>) |
| Defendant. | )<br>) |

17    **I.    PROCEEDINGS**

18         Plaintiff seeks review of the Commissioner's final decision

19    denying her application for Social Security disability insurance

20    benefits ("DIB").  The parties consented to the jurisdiction of

21    the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C.

22    § 636(c).  This matter is before the Court on the parties' Joint

23    Stipulation, filed May 14, 2013, which the Court has taken under

24    submission without oral argument.  For the reasons stated below,

25

26

27

28

         [1]    On February 14, 2013, Colvin became the Acting
Commissioner of Social Security.  Pursuant to Federal Rule of
Civil Procedure 25(d), the Court therefore substitutes Colvin for
Michael J. Astrue as the proper Respondent.

the Commissioner's decision is reversed and this matter is remanded for further proceedings.

**II.  BACKGROUND**

Plaintiff was born on March 21, 1962, and has an eighth-grade education. (Administrative Record ("AR") 55, 203, 224.) She previously worked as a housekeeper in a hotel.  (AR 58, 220.) On November 15, 2007, Plaintiff was injured at work when she lifted some blankets and felt something "pop" in her right shoulder.  (AR 57-60.)

On August 14, 2009, Plaintiff filed an application for DIB, alleging that she had been unable to work since November 15, 2007, because of back, neck, and shoulder pain.  (AR 75-76, 203-04, 219.)  After her application was denied, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 89-90.)  A hearing was held on January 13, 2011, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE").  (AR 55-73.)  In a written decision issued January 25, 2011, the ALJ found that Plaintiff was not disabled.  (AR 15-23.)  On May 23, 2012, the Appeals Council considered additional evidence submitted by Plaintiff but denied her request for review.  (AR 1-5.)  The Appeals Council ordered that the new evidence be made part of the administrative record.  (AR 5.) This action followed.

**III. STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.

2

1    Id.; Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420,

2    1427, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746

3    (9th Cir. 2007).  Substantial evidence means such evidence as a

4    reasonable person might accept as adequate to support a

5    conclusion.  Richardson, 402 U.S. at 401; Lingenfelter v. Astrue,

6    504 F.3d 1028, 1035 (9th Cir. 2007).  It is more than a scintilla

7    but less than a preponderance.  Lingenfelter, 504 F.3d at 1035

8    (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

9    2006)).  To determine whether substantial evidence supports a

10   finding, the reviewing court "must review the administrative

11   record as a whole, weighing both the evidence that supports and

12   the evidence that detracts from the Commissioner's conclusion."

13   Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996).  Moreover,

14   "when the Appeals Council considers new evidence in deciding

15   whether to review a decision of the ALJ, that evidence becomes

16   part of the administrative record, which the district court must

17   consider when reviewing the Commissioner's final decision for

18   substantial evidence."  Brewes v. Comm'r of Soc. Sec. Admin., 682

19   F.3d 1157, 1163 (9th Cir. 2012); see also Taylor v. Comm'r of

20   Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).  "If the

21   evidence can reasonably support either affirming or reversing,"

22   the reviewing court "may not substitute its judgment" for that of

23   the Commissioner.  Reddick, 157 F.3d at 720-21.

24   **IV.   THE EVALUATION OF DISABILITY**

25       People are "disabled" for purposes of receiving Social

26   Security benefits if they are unable to engage in any substantial

27   gainful activity owing to a physical or mental impairment that is

28   expected to result in death or which has lasted, or is expected

3

1  to last, for a continuous period of at least 12 months.   42

2  U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257

3  (9th Cir. 1992).

4        A.   The Five-Step Evaluation Process

5        The ALJ follows a five-step sequential evaluation process in

6  assessing whether a claimant is disabled.   20 C.F.R.

7  § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th

8  Cir. 1995) (as amended Apr. 9, 1996).   In the first step, the

9  Commissioner must determine whether the claimant is currently

10 engaged in substantial gainful activity; if so, the claimant is

11 not disabled and the claim must be denied.   § 404.1520(a)(4)(i).

12 If the claimant is not engaged in substantial gainful activity,

13 the second step requires the Commissioner to determine whether

14 the claimant has a "severe" impairment or combination of

15 impairments significantly limiting her ability to do basic work

16 activities; if not, the claimant is not disabled and the claim

17 must be denied.   § 404.1520(a)(4)(ii).   If the claimant has a

18 "severe" impairment or combination of impairments, the third step

19 requires the Commissioner to determine whether the impairment or

20 combination of impairments meets or equals an impairment in the

21 Listing of Impairments ("Listing") set forth at 20 C.F.R., Part

22 404, Subpart P, Appendix 1; if so, disability is conclusively

23 presumed and benefits are awarded.   § 404.1520(a)(4)(iii).   If

24 the claimant's impairment or combination of impairments does not

25 meet or equal an impairment in the Listing, the fourth step

26 requires the Commissioner to determine whether the claimant has

27

28

4

1  sufficient residual functional capacity ("RFC")[2] to perform her

2  past work; if so, the claimant is not disabled and the claim must

3  be denied.  § 404.1520(a)(4)(iv).  The claimant has the burden of

4  proving that she is unable to perform past relevant work.

5  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a

6  prima facie case of disability is established.  Id.  If that

7  happens or if the claimant has no past relevant work, the

8  Commissioner then bears the burden of establishing that the

9  claimant is not disabled because she can perform other

10 substantial gainful work available in the national economy.

11 § 404.1520(a)(4)(v).  That determination comprises the fifth and

12 final step in the sequential analysis.  § 404.1520; Lester, 81

13 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

14     B.   The ALJ's Application of the Five-Step Process

15     At step one, the ALJ found that Plaintiff had not engaged in

16 any substantial gainful activity since November 15, 2007, the

17 alleged onset date.  (AR 17.)  At step two, the ALJ concluded

18 that Plaintiff had the severe impairments of "disorders of the

19 muscles, ligaments and fascia and an affective mood disorder."

20 (Id.)  At step three, the ALJ determined that Plaintiff's

21 impairments did not meet or equal any of the impairments in the

22 Listings.  (AR 17-18.)  At step four, the ALJ found that

23 Plaintiff retained the RFC to perform "less than a full range of

24

25

26

27     [2]   RFC is what a claimant can do despite existing

28 exertional and nonexertional limitations.  20 C.F.R. § 404.1545;
   see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

light work"[3] – specifically, she could "lift and carry twenty pounds occasionally and ten pounds frequently"; "sit, stand and walk six hours of an eight-hour workday"; "climb frequently"; and "perform simple repetitive tasks"; but she could never climb ropes or scaffolds and "must avoid overhead lifting with her upper extremities." (AR 18.) Based on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing jobs that existed in significant numbers in the national economy. (AR 21.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 22.)

**V.   DISCUSSION**

Plaintiff alleges that the ALJ (1) erroneously determined that Plaintiff could perform alternative work and (2) failed to properly consider the opinion of a nonexamining state-agency consultant, Dr. G. Johnson. (J. Stip. at 4.)

A.   The ALJ Did Not Err In Determining that Plaintiff Could Perform Alternative Work

Plaintiff contends that the ALJ erroneously found that she could perform alternative work because both of the identified jobs require "frequent" reaching, which allegedly conflicts with

---

[3]   "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The regulations further specify that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Id. A person capable of light work is also capable of "sedentary work," which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying [small articles]" and may involve occasional walking or standing. § 404.1567(a)-(b).

her RFC preclusion from performing "overhead work." (J. Stip. at 4-12, 16-17.)

### 1. Applicable law

At step five of the sequential evaluation process, the Commissioner has the burden to demonstrate that the claimant can perform work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1560(c). The Commissioner may satisfy that burden either through VE testimony or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2. Tackett, 180 F.3d at 1100-01. When a VE provides evidence about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the Dictionary of Occupational Titles ("DOT").[4] See SSR 00-4p, 2000 WL 1898704, at *4; Massachi v. Astrue, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that application of SSR 00-4p is mandatory). An ALJ's failure to do so is procedural error, although the error is harmless if no actual conflict existed or the VE provided sufficient evidence to support the conclusion.

---

[4] In making disability determinations, the Commissioner takes "administrative notice of reliable job information" from the DOT, 20 C.F.R. § 404.1566(d), which is usually "the best source for how a job is generally performed," Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001). See also Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) ("In making disability determinations, the Social Security Administration relies primarily on the [DOT] for information about the requirements of work in the national economy." (internal quotation marks and citation omitted)).

<u>Massachi</u>, 486 F.3d at 1154 n.19.

The Court must consider the ALJ's decision in the context of "the entire record as a whole"; if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).

2.   <u>Relevant facts</u>

During the hearing, the ALJ posed the following hypothetical to the VE:

> Number one, I want you to assume a hypothetical individual with the claimant's education, training, and work experience, who is limited to occasionally lifting and carrying 20 pounds, frequently lifting and carrying 10, standing and walking with normal breaks for a total of six of an eight-hour day, sit with normal breaks for a total of six of an eight-hour day. Postural limitations would be occasional for crawling, frequent for climbing ramps, stairs; balancing, stooping, kneeling, crouching; never climbing ladders, ropes, or scaffolds; and no overhead work with either arm — bilaterally no overhead work.

(AR 68.)  The VE responded that Plaintiff could perform the jobs of "small products assembler I," which carried the DOT number 706.684-022, and "electronics worker," which carried the DOT number 726.687-010.  (AR 69.)  The ALJ then posed a second hypothetical that was almost identical to the first hypothetical but included a limitation to "simple tasks with simple work-related decisions."  (<u>Id.</u>)  The VE responded that Plaintiff could

8

1   still perform the previously named jobs.  (Id.)  At the close of

2   the VE's testimony, the ALJ asked whether her testimony had been

3   "consistent with the Dictionary of Occupational Titles and its

4   companion publications."  (AR 72.)  The VE responded that it had.

5   (Id.)

6        In his written decision, the ALJ found that Plaintiff

7   retained the RFC to perform light work with several additional

8   limitations, including that she "avoid overhead lifting with her

9   upper extremities."  (AR 18.)  Based on the VE's testimony, the

10   ALJ found that Plaintiff could perform the assembler and

11   electronics-worker jobs and thus was not disabled.[5]  (AR 22.)

12             3.   Discussion

13        The DOT states that the assembler and electronics-worker

14   jobs both require "[f]requent[]" reaching, which is defined as

15   "[e]xist[ing] from 1/3 to 2/3 of the time."  DOT 706.684-022,

16   1991 WL 679050; DOT 726.687-010, 1991 WL 679633.  A DOT companion

17   publication and a Social Security policy statement define

18   "reaching" as "[e]xtending hand(s) and arm(s) in any direction."

19   U.S. Dep't of Labor, Selected Characteristics of Occupations

20   Defined in the Revised Dictionary of Occupational Titles App. C

21   (1993) ("SCO"); SSR 85-15, 1985 WL 56857, at *7; see also SSR

22   00-4p, 2000 WL 1898704, at *2 (ALJ must resolve any "apparent

23   unresolved conflict" between VE testimony and DOT, which includes

24   its "companion publication" the SCO).  Plaintiff argues that the

25   reaching requirements of those jobs conflict with the ALJ's

26

27        [5]    The ALJ referred to the two jobs as "small parts

28   assembler" and "telecom worker" but provided the same DOT numbers
     as those given by the VE.  (AR 22.)

finding that she was "precluded from performing overhead work" because they both "require[] frequent reaching in all directions, including overhead."  (J. Stip. at 7.)

As an initial matter, the ALJ fulfilled his "affirmative responsibility to ask about any possible conflict between [the VE] evidence and information provided in the DOT," SSR 00-4P, 2000 WL 1898704 at *4, by eliciting the VE's affirmation that her testimony was consistent with the DOT (see AR 72).  In any event, Plaintiff's argument fails because the ALJ did not preclude Plaintiff from performing "overhead reaching" – instead, he precluded her from performing "overhead lifting" and "overhead work."[6]  (AR 18, 68 (emphasis added).)  Viewed in the context of the evidence as a whole, see Ryan, 528 F.3d at 1198, the ALJ most reasonably intended to preclude Plaintiff from doing jobs that regularly required lifting items or performing maneuvers above her head, not from ever reaching in an upward direction.  Had the ALJ intended to say that Plaintiff could perform no overhead "reaching," he likely would have simply inserted that limitation into the list of prohibited activities.  Indeed, the undersigned has read dozens of Social Security decisions, and ALJs regularly prescribe limitations on various kinds on "reaching" or "overhead reaching."  See, e.g., Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012) (noting that ALJ's RFC placed limit on overhead "reach[ing]"); Mondragon v. Astrue, 364 F. App'x 346, 348 (9th Cir. 2010) (same).  "Overhead work" can reasonably be interpreted to mean jobs performed almost constantly overhead, such as a

---

[6]   Plaintiff has not challenged the ALJ's RFC determination.

1  window washer, tree trimmer, or wall washer.  See, e.g., DOT
2  389.687-014, 1991 WL 673282 (window-washer job requires
3  "[c]lean[ing] windows, glass partitions, mirrors, and other glass
4  surfaces of building interior or exterior," "set[ting] and
5  climb[ing] ladder to reach second or third story," and
6  "stand[ing] to reach first floor or inside windows"); DOT
7  408.664-010, 1991 WL 673358 (tree-trimmer job requires
8  "[c]limb[ing] trees to reach branches interfering with wires and
9  transmission towers"; "[p]run[ing] treetops, using saws or
10 pruning shears"; and "[r]emov[ing] broken limbs from wires, using
11 hooked extension pole"); DOT 381.687-026, 1991 WL 673260 (wall-
12 cleaner job requires "[c]lean[ing] walls and ceilings by hand").

13     The medical record, moreover, does not support a finding
14 that Plaintiff was totally prohibited from performing any
15 overhead reaching.  Although Plaintiff frequently complained of
16 shoulder and neck pain, her diagnostic studies revealed at most
17 only mild abnormalities.  Plaintiff's shoulder x-rays were normal
18 (AR 465-66, 816); a September 2009 cervical-spine MRI showed only
19 "[m]inimal 1-2 mm disc bulges and annulus irregularities" at C4-5
20 and C5-6 with "[n]o focal disc herniation or canal stenosis" (AR
21 600-01); a September 2009 right-shoulder MRI showed only a small
22 amount of fluid and "mild" degenerative changes with no full-
23 thickness tear (AR 590); and a May 2010 left-shoulder MRI
24 revealed only a "[s]mall tear involving the supraspinatus tendon"
25 (AR 714).[7]  Dr. Jeffrey Frank Sodl at Kaiser noted that

26

27     [7]     After the ALJ rendered his opinion, Plaintiff submitted
28 to the Appeals Council a December 2011 left-shoulder MRI showing
   findings that were "very suspicious for a subtotal partial tear

Plaintiff's right-shoulder MRI was "normal" (AR 583) and that her left-shoulder MRI was "clean" (AR 705). He observed at around the same time, in June 2010, that she had "full overhead motion." (AR 704.) Indeed, several of Plaintiff's doctors noted that Plaintiff complained of shoulder pain but had good range of motion and strength. (See, e.g., AR 439-40 (Aug. 2009, Dr. Ahn Quan Quoc Nguyen's note that Plaintiff had some pain above 90 degrees when moving right shoulder but "[f]unctional" range of motion of both arms); AR 582-83 (Oct. 2009, Dr. Sodl's finding that Plaintiff had full shoulder motion, good cuff strength, and no stiffness and noting "very benign shoulder exam today (bilaterally)"); AR 756 (Jan. 2010, Dr. Divinia Gracia Lomo Oropilla's finding that Plaintiff had intact sensation and normal strength throughout); AR 718 (Mar. 2010, Dr. Oropilla's finding that Plaintiff "[m]ove[d] all extremities well with good strength and coordination"); AR 710 (May 2010, Dr. Sodl's finding that Plaintiff had positive impingement signs but "full shoulder motion," no stiffness, no cuff weakness, and normal neurologic exam); AR 704-05 (June 2010, Dr. Sodl's finding that Plaintiff

or a small full-thickness tear" that was "larger compared to the 2010 study." (AR 2526.) That MRI, however, took place nearly a year after the ALJ issued his decision, on January 25, 2011, and nothing indicates that it reflects Plaintiff's condition on or before that date. As such, it cannot render the ALJ's decision unsupported by substantial evidence. See 20 C.F.R. § 404.970(b) ("[T]he Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."); compare Taylor, 659 F.3d at 1232 (treating doctor's assessment postdated expiration of disability insurance and ALJ decision but "encompassed the period from the date of disability onset . . . until the date of his evaluation").

had a "painful arc," impingement signs, and numbness and tingling in left arm but "full overhead motion" and "[n]o shoulder stiffness"); AR 788 (Nov. 2010, Dr. Oropilla's finding that Plaintiff "[m]ove[d] all extremities well with good strength and coordination"); AR 767-68 (Nov. 2010, Dr. Nguyen's finding that Plaintiff had some shoulder pain with overhead movement but was "still functional"); but see AR 1037 (Mar. 2009, Dr. Kerrigan's finding that Plaintiff had decreased range of motion and tenderness in right shoulder).)  Such findings are inconsistent with a condition that precluded Plaintiff from ever reaching above her head with either arm.

Indeed, none of Plaintiff's doctors ever opined that she was totally precluded from overhead reaching, and those who rendered opinions regarding Plaintiff's functional limitations merely found that she was limited in her ability to perform overhead or above-shoulder "work."  As the ALJ noted (AR 19), Dr. Soheil M. Aval, an orthopedic surgeon who evaluated Plaintiff as part of her worker's compensation case, examined Plaintiff and reviewed her medical records before concluding that she should "avoid activities involving heavy lifting, heavy or repetitive pushing or pulling, as well as repetitive work at or above-shoulder level" (AR 1119 (emphasis added)).  Dr. R. Jacobs, a nonexamining state-agency physician, reviewed Plaintiff's medical records and completed a physical-RFC assessment stating, among other things, that Plaintiff could never perform "overhead work with either arm."  (AR 504-05 (emphasis added).)  Interpreting "work" to mean "job" is consistent with Dr. Jacobs's indication on the RFC assessment and a case-analysis form that Plaintiff's ability to

"reach" overhead was merely "limited."  (AR 505, 510.)  In March
2010, nonexamining state-agency physicians Drs. R.E. Brooks and
Vaghaiwalla affirmed Dr. Jacobs's RFC assessment.  (AR 668.)

     Moreover, according to the DOT descriptions, neither of the
jobs the ALJ found that Plaintiff could perform appear to be
"overhead work."  The assembler job requires a person to perform
"any combination" of listed tasks on an assembly line, such as
"[p]ositioning parts in specified relationship to each other,"
"fasten[ing] parts together by hand or using handtools or
portable powered tools," "[f]requently work[ing] at bench as
member of assembly group assembling one or two specific parts and
passing unit to another worker," and "[l]oad[ing] and unload[ing]
previously setup machines."  DOT 706.684-022, 1991 WL 679050.
The electronics-worker job requires a person to perform "any
combination" of listed tasks to "clean, trim, or prepare
components or parts for assembly by other workers," such as
cleaning and deglossing parts; "[t]rim[ing] flash from molded or
cast parts, using cutting tool or file"; "[a]ppl[ying] primers,
plastics, adhesives, and other coatings to designated surfaces";
preparing wires for assembly; positioning and fastening parts;
moving parts and finished components to designated areas of the
plant; and loading and unloading parts from ovens, baskets,
pallets, and racks.  DOT 726.687-010, 1991 WL 679633.  The DOT
descriptions for other jobs, by contrast, often indicate that
they require overhead work.  See, e.g., DOT 520.686-022, 1991 WL
674044 (describing flour-blender-helper job as requiring
"turn[ing] hand screws or moves levers to adjust gate openings of
overhead storage bins to release specified amounts of flour into

14

blender hopper"); DOT 525.687-034, 1991 WL 674446 (describing gambreler-helper job as requiring "[p]lac[ing] trolley. . . onto overhead conveyor rail so that carcasses can be hung"); DOT 381.687-018, 1991 WL 673258 (describing industrial-cleaner job as requiring "[c]lean[ing] lint, dust, oil, and grease from machines, overhead pipes, and conveyors"); DOT 553.686-018, 1991 WL 675263 (describing curing-press-operator job as requiring "[l]ift[ing] tires from inflating unit at end of cooling cycle and load[ing] them onto overhead conveyor").

Thus, interpreting the ALJ's findings in the manner most consistent with the medical evidence, no conflict existed among the ALJ's RFC, the VE's testimony, and the DOT. Reversal is therefore not warranted on this basis.

B.   The ALJ Erred by Failing to Discuss Dr. Johnson's Opinion

Plaintiff argues that the ALJ improperly "ignore[d]" the opinion of nonexamining physician Johnson, who "specifically described [Plaintiff] as suffering from mental limitations which preclude all work activity." (J. Stip. at 18.) For the reasons discussed below, the Court agrees that the ALJ erred by failing to discuss Dr. Johnson's findings.

1.   Relevant facts

On November 18, 2008, licensed clinical psychologist Nelson J. Flores examined Plaintiff, reviewed her medical records, and completed a report as part of her worker's compensation case. (AR 324-48.) Dr. Flores diagnosed Plaintiff with depressive disorder, anxiety disorder, pain disorder, sleep disorder, female hypoactive sexual desire disorder, and psychological factors

15

affecting medical condition, and he assigned a global-assessment-of-functioning ("GAF") score of 61, indicating mild symptoms.[8] (AR 338-39.)  He opined that Plaintiff's "current global level of psychiatric disability is <u>slight</u>."  (AR 341 (emphasis in original).)  More specifically, Dr. Flores opined that Plaintiff had a "[v]ery [s]light" impairment of her ability to comprehend and follow instructions and perform simple and repetitive tasks and a "[s]light" impairment of her ability to maintain a work pace appropriate to a given workload, perform complex or varied tasks, influence people, and make generalizations, evaluations, and decisions without immediate supervision.  (AR 346-48.) Plaintiff had a "[s]light to [s]light to [m]oderate" limitation in her ability to relate to other people beyond giving and receiving instructions and to accept and carry out responsibility for direction, control, and planning.  (<u>Id.</u>)

Dr. Flores opined that Plaintiff should not work at "high altitudes," "in any position where she might be at risk of being involved in an industrial accident if she becomes anxious and/or distracted," or "in any position that requires handling stress and/or conflicts on a regular basis while interacting with the public and/or coworkers."  (AR 344.)

On October 21, 2009, Dr. Johnson, a state-agency consulting

---

[8]   A GAF score represents a rating of overall psychological functioning on a scale of 0 to 100.  <u>See</u> Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Disorders</u>, Text Revision 34 (4th ed. 2000).  A GAF score in the range of 61 to 70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  <u>Id.</u>

physician, reviewed Plaintiff's medical records and completed a psychiatric-review-technique ("PRT") form and a mental-RFC assessment.  (AR 511-24.)  On the PRT form, Dr. Johnson opined that Plaintiff suffered from a depressive disorder that resulted in mild restriction of activities of daily living; mild difficulties in social functioning; mild difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (AR 514, 519.)

In section I of the mental-RFC assessment, which was titled "summary conclusions" and had boxes for indicating whether a claimant was "[n]ot [s]ignificantly [l]imited," "[m]oderately [l]imited," or "[m]arkedly [l]imited" in each of several listed functions, Dr. Johnson checked that Plaintiff was "[n]ot [s]ignificantly [l]imited" in her ability to (1) remember locations and worklike procedures; (2) understand, remember, and carry out very short and simple instructions; (3) perform activities within a schedule, maintain regular attendance, and be punctual; (4) work in coordination with or proximity to others without being distracted by them; (5) interact appropriately with the general public; (6) ask simple questions or request assistance; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (10) respond appropriately to changes in the work setting; (11) be aware of normal hazards and take appropriate precautions; (12) travel in unfamiliar places or use public transportation; and (13) set realistic goals

17

or make plans independently of others.  (AR 522-23.)  Dr. Johnson
checked that Plaintiff was "[m]oderately [l]imited" in her
ability to (1) understand, remember, and carry out detailed
instructions; (2) maintain attention and concentration for
extended periods; (3) sustain an ordinary routine without special
supervision; (4) make simple work-related decisions; and (5)
complete a normal workday and workweek without interruptions from
psychologically based symptoms and perform at a consistent pace
without an unreasonable number and length of rest periods.  (Id.)
In section III of the assessment, which was titled "functional
capacity assessment" and was designated for "elaborations on the
preceding capacities" and explanation of the "summary
conclusions," Dr. Johnson wrote that Plaintiff was "not capable
of complex, detailed tasks, however [Plaintiff was] able to
remember, perform and sustain simple tasks," could "accept
direction from supervisor and work alongside coworkers and
public," and could "adapt to normal work stresses inherent to
workplace."  (AR 524.)

As discussed in part V.A.2, during the January 13, 2011
hearing, the ALJ asked the VE whether jobs existed for someone
with Plaintiff's education, training, work experience, and RFC,
including a limitation to "simple tasks with simple work-related
decisions."  (AR 68-69.)  The VE identified two jobs that such a
person could perform.  (Id.)  Later in the hearing, Plaintiff's
attorney asked the VE whether work would be available for a
person with the same physical limitations identified in the ALJ's
hypothetical but with the added mental limitations identified by
Dr. Johnson, that is, moderate limitations in her ability to

18

"understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," "sustain an ordinary routine without special supervision," "make simple work-related decisions," "complete a normal workday and workweek without interruptions from psychologically based symptoms," and "perform at a consistent pace without an unreasonable number and length of rest periods." (AR 70-71 (citing Dr. Johnson's mental-RFC assessment.)  The VE testified that no work would be available for such a person. (Id.)

In a written decision issued January 25, 2011, the ALJ summarized Dr. Flores's opinion (AR 20) and concluded that "[f]rom a mental standpoint," Plaintiff retained the RFC to perform "simple repetitive tasks" (AR 18).  Based on the VE's testimony that such a person could perform the two identified jobs, the ALJ concluded that Plaintiff was not disabled.  (AR 22.)

    2.  Discussion

Although an ALJ is "not required to discuss every piece of evidence," see Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), he nevertheless "must explain why significant probative evidence has been rejected," Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation and internal quotation marks omitted); accord Howard, 341 F.3d at 1012 (noting that "ALJ is not required to discuss evidence that is neither significant nor probative"); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012). Here, the ALJ erred by failing to discuss Dr. Johnson's opinion

because it constituted significant, probative evidence of
Plaintiff's mental limitations and their effect on her ability to
work, and some substantial evidence in the record – the VE's
testimony, upon which the ALJ expressly relied – indicated that
someone with those mental limitations could not work.

     The VE testified that an individual with Plaintiff's
physical limitations and the mental limitations identified by Dr.
Johnson would be unable to work at any job.  (AR 70-71.)  That
opinion was well within the VE's area of expertise.  See Tackett,
180 F.3d at 1101 (VE "translates" hypotheticals "into realistic
job market probabilities by testifying . . . to what kinds of
jobs the claimant still can perform and whether there is a
sufficient number of those jobs available" to support finding of
not disabled (citations and internal quotation marks omitted));
Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986) ("A [VE] is
able to compare all the unique requirements of a specified job
with the particular ailments a claimant suffers in order to reach
a reasoned conclusion whether the claimant can perform the
specific job.").  The ALJ nevertheless failed to mention Dr.
Johnson's opinion or that portion of the VE's testimony anywhere
in the decision.  (See AR 15-23.)  Because Dr. Johnson's findings
combined with the VE's testimony indicate that Plaintiff is
unemployable, the ALJ erred by failing to explain why he
apparently rejected them.  See Vincent, 739 F.2d at 1394-95; see
also SSR 96-6p, 1996 WL 374180, at *2 (ALJ "may not ignore" the
opinions of state-agency medical consultants "and must explain
the weight given to the opinions in their decisions").

     Contrary to the Commissioner's argument (J. Stip. at 20-21),

the ALJ's finding that Plaintiff was limited to "simple repetitive tasks" (AR 18) did not accommodate Dr. Johnson's findings of moderate limitations on her ability to concentrate for extended periods, complete a normal workday or workweek without interruption, sustain an ordinary routine, make simple decisions, and perform at a consistent pace.  See Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) (ALJ erred by limiting claimant to "one to three step tasks" and omitting "moderate difficulties" in maintaining concentration, persistence, and pace because "work described by the [VE] may still require the speed and concentration [claimant] lacks"); Brink v. Comm'r Soc. Sec. Admin., 343 F. App'x 211, 212 (9th Cir. 2009) (ALJ erred when hypothetical to VE "referenced only 'simple, repetitive work,' without including limitations on concentration, persistence or pace").[9]  Indeed, the VE testified

---

[9]     In Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."  Here, however, the ALJ's finding that Plaintiff could perform simple repetitive tasks without any other limitation conflicted with Dr. Johnson's findings of moderate limitations in several functional areas, including concentration, pace, the ability to complete a normal workday or workweek, and the ability to make simple decisions.  Indeed, that conflict is particularly clear given the VE's testimony that a person limited to simple repetitive tasks would be employable but a person with the moderate limitations identified by Dr. Johnson would not. (See AR 68-71.)  The ALJ, moreover, failed to give any reason for rejecting Dr. Johnson's opinion or the VE's testimony.  Compare Stubbs-Danielson, 539 F.3d at 1173-74 (noting that ALJ rejected VE's testimony that person "with anything more than a mild limitation with respect to pace would be precluded from employment except in a sheltered workshop" because "it did not address [plaintiff's] RFC and did not appear to be based on her

that a person with Plaintiff's physical RFC who was limited to

"simple tasks" could perform jobs in the national economy, but

such a person with the moderate limitations identified by Dr.

Johnson would be unemployable.  (AR 68-71.)

Thus, the ALJ erred by failing to expressly consider Dr.

Johnson's opinion and the VE's testimony concerning it or explain

any basis for rejecting them.  That error was not harmless

because Dr. Johnson's opinion and the VE's testimony were

directly relevant to the ultimate issue of whether Plaintiff can

perform work in the national economy.  See Molina v. Astrue, 674

F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error is harmless when

"inconsequential to the ultimate nondisability determination"

(citation and internal quotation marks omitted)); see also Sawyer

---

individual record as a whole"). Stubbs-Danielson is therefore
inapplicable here. See Betts v. Colvin, No. 11-17522, __ F.
App'x __, 2013 WL 3157434, at *1 n.1 (9th Cir. June 24, 2013)
(distinguishing Stubbs-Danielson because there, ALJ's RFC
assessment "was consistent with the allegedly disregarded medical
opinion" and "ALJ had explained the omission from the RFC
assessment of the aspects of that opinion that had allegedly been
ignored"). Moreover, given the VE's testimony, the Court cannot
conclude that Dr. Johnson's finding that Plaintiff could perform
"simple tasks" (AR 524) rendered any error harmless because a VE
is better suited than a medical doctor to assess what jobs
someone with particular limitations can perform, compare 20 CFR
§ 404.1527(a)(2) (physicians' medical opinions reflect "judgments
about the nature and severity of your impairment(s), including
your symptoms, diagnosis and prognosis, what you can still do
despite impairment(s), and your physical or mental
restrictions"), with Tackett, 180 F.3d at 1101 (in response to
hypothetical that "set[s] out all of the claimant's impairments,"
VE testifies as to "what kinds of jobs the claimant still can
perform and whether there is a sufficient number of those jobs
available"); see also Smallwood v. Chater, 65 F.3d 87, 89 (8th
Cir. 1995) (noting that "it is for a [VE] to take into account
medical limitations, including opinions as to work time limits,
and offer an opinion on the ultimate question whether a claimant
is capable of gainful employment").

v. Astrue, 303 F. App'x 453, 455 (9th Cir. 2008) (ALJ's failure to consider opinions of state-agency consultants not harmless when evidence was "directly relevant to the ultimate issue: whether [plaintiff] can perform light work").

Plaintiff is entitled to remand on this ground.

**VI.  CONCLUSION**

When error exists in an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  INS v. Ventura, 537 U.S. 12, 16, 123 S. Ct. 353, 355, 154 L. Ed. 2d 272 (2002) (citations and quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004).  Accordingly, remand, not an award of benefits, is the proper course in this case.  See Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1136 (9th Cir. 2011) (remand for automatic payment of benefits inappropriate unless evidence unequivocally establishes disability).

<u>ORDER</u>

Accordingly, **IT IS HEREBY ORDERED** that (1) the decision of the Commissioner is REVERSED; (2) Plaintiff's request for remand is GRANTED; and (3) this action is REMANDED for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: August 13, 2013

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge